PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 97-6576
_____

D.C. Docket No. CV 94-PT-2763-S


ERNEST RAY RITCH,
MARY J. RITCH,

                                    Plaintiffs-Appellants,


    versus


THE ROBINSON-HUMPHREY CO.,

                                    Defendant-Appellee.


-------------------------------
Appeal from the United States District Court
for the Northern District of Alabama
-------------------------------
(June 10, 1998)

Before CARNES, Circuit Judge, KRAVITCH, Senior Circuit Judge, and
MILLS*, Senior District Judge.

_____
*Honorable Richard Mills, Senior U.S. District Judge for the Central
District of Illinois, sitting by designation.


1

**MILLS, Senior District Judge:**

### I. Background

In 1989, Ernest Ray Ritch and Mary J. Ritch--a retired couple in their 70s--opened an account with broker Steuart Evans at The Robinson-Humphrey Company, Inc. ("Robinson-Humphrey") in Huntsville, Alabama, on the recommendation of their son, Joe Ritch. After opening the account with Robinson-Humphrey, Ray Ritch purchased Comptronix stock (the stock at issue here) on two occasions. Ray Ritch had bought stock in Comptronix several times prior to opening an account with Robinson-Humphrey, beginning in 1986 when the company was privately held. Joe Ritch was on the Board of Directors of Comptronix.

Ray Ritch claims that in September 1992, Evans recommended to him that he sell his other stocks, borrow several hundred thousand dollars from Robinson-Humphrey "on the margin" on his Comptronix stock, and use the money to double his Comptronix holdings. Evans denied ever making the recommendation.

Shortly thereafter, Ray Ritch asked his son Joe about Evans' recommendation. Joe replied, "That sounds like a lot, I don't think I would do that many." Nonetheless, Mr. Ritch bought an additional 15,000 shares of Comptronix with $315,000 he borrowed on the margin and deposited his other Comptronix certificates there to secure the debt. On November 25, 1992, Comptronix stock plummeted due to an admission by the company that its financial results had been significantly overstated in the company's financial reports. The Ritches' stock was completely sold out on margin calls, resulting in a loss to the Ritches of $248,407.88

The Ritches sued Robinson-Humphrey claiming that it made an "unsuitable" investment recommendation. The Ritches asserted a claim for damages under §8-6-19(a) of the Alabama Securities Act, an implied claim under SEC Rule 10b-5, a wanton negligence claim, and a claim of breach of fiduciary duty.

After a jury trial, the district court granted Robinson-Humphrey judgment as a matter of law on the implied Rule 10b-5 claim, the wanton negligence claim, and the claim for breach of fiduciary duty, leaving only the Alabama Securities Act claim to go to the jury. On the claim under the

Alabama Securities Act, the district court instructed the jury that, in order for the Ritches to recover damages on that claim, the jury had to find that Evans made the recommendation, that the recommendation was unsuitable, and that the Ritches purchased the stock because of the recommendation.

Although the jury determined that Evans made an unsuitable recommendation, it concluded that the Ritches did not buy the Comptronix stock at issue because of the recommendation. Therefore, judgment was entered for Robinson-Humphrey.

## II. Analysis

The Ritches raise four issues on appeal: 1) whether the district court erred by imposing a causation requirement on the Alabama Securities Act claim; 2) whether the district court erred in granting judgment as a matter of law on the Ritches' Rule 10b-5 claim; 3) whether the district court erred in granting judgment as a matter of law on the Ritches' claim for wanton negligence; and 4) whether the district court erred in granting judgment as a matter of law on the Ritches' breach of fiduciary duty claim.

## A.

The Court will address the latter three issues first. A district court's grant of judgment as a matter of law is reviewed de novo, applying the same standard that the district court applied in its ruling granting the motion. Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 439 (11th Cir. 1996). When evaluating the grant of judgment as a matter of law, the court should consider all the evidence, in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmoving party.

> "If the facts and inferences overwhelmingly point so strongly and overwhelmingly in favor of one party that the [c]ourt believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied and the case submitted to

3

the jury.

Trotter v. Board of Trustees of University of Alabama, 91 F.3d 1449, 1452-3 (11th Cir. 1996)(quoting Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969)). "There must be more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Williams v. Dresser Industries, Inc., 120 F.3d 1163, 1167 (11th Cir. 1997)(quoting Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989)).

Considering all the evidence in this case and construing the evidence in the light most favorable to the Ritches, this Court finds that judgment as a matter of law was properly granted.

**B.**

Consequently, the Court's primary focus on review pertains to the Ritches' claim under the Alabama Securities Act. This Court reviews the district court's imposition of the causation element in the Alabama Securities Act, a question of law, de novo. See Kahn v. Smith Barney Shearson Inc., 115 F.3d 930, 932 (11th Cir. 1997)(questions of law reviewed de novo).

Section 8-6-19 of the Alabama Securities Act provides:

**4**

(a) Any person who:

(1) Sells or offers to sell a security in violation of any provision of this article or of any rule or order imposed under this article or of any condition imposed under this article, or

(2) Sells or offers to sell a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission,

is liable to the person buying the security from him who may bring an action to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six percent per year from the date of disposition.

The Ritches argued that Robinson-Humphrey violated the Alabama Securities Commission's Rule 830-X-3-.12 ("Suitability of Recommendations"), which provides:

Every dealer, investment adviser and every associated person thereof who recommends to a customer the purchase, sale or exchange of any security shall have reasonable grounds to believe and shall believe that the recommendation is suitable for

5

such customer on the basis of information furnished by such customer after reasonable inquiry concerning the customer's investment objectives, financial situation and needs, and any other information known by such dealer, investment adviser or associated person thereof[1].

In support of its decision to include the causation element, the district court noted that the Alabama courts consider federal law when interpreting their "blue sky" laws. The court also noted that there was some suggestion that either Rule 10b-5 or §12(2) of the 1933 Securities Act should be the one considered when interpreting the Alabama statute. Because the case involved a secondary sale[2], the court chose to consider Rule 10b-5. The court found

---

**[1] In their complaint, the Ritches alleged a violation of Ala. Code § 8-6-19(a) but did not specify whether their claim was based on § 8-6-19(a)(1) or § 8-6-19(a)(2). On appeal, the Ritches argue that Robinson-Humphrey violated § 8-6-19(a)(1) by selling securities in violation of Rule 830-X-3-.12 and that Robinson-Humphrey violated § 8-6-19(a)(2) because its agent, Evans, sold securities to the Ritches after failing to disclose material facts. We decline to consider the Ritches' § 8-6-19(a)(2) argument, however, because the Ritches did not object at trial or on appeal to the district court's decision to instruct the jury on solely the § 8-6-19(a)(1) theory. Accordingly, this Court's discussion of the Alabama Securities Act concerns only § 8-6-19(a)(1).**

**[2] A "secondary sale" or "secondary distribution" is where a major shareholder (or group of shareholders) sells his or her stock to someone else. A "primary distribution" is when stock is sold from the issuer to the stockholder. THOMAS LEE HAZEN, FEDERAL SECURITIES LAW, FEDERAL JUDICIAL CENTER (1993).**

that it was more appropriate to require causation (as Rule 10b-5 does) because it defied common sense that a broker should be liable for a transaction known by all to be attendant with risk, when there is a finding that a recommendation by the broker did not cause the purchase.

The Ritches argue that because the Alabama Securities Act has been labeled a "strict liability" statute, see Banton v. Hackney, 557 So.2d 807 (Ala. 1989), they should not have to prove causation. Banton, however, did not decide whether causation was an element of a claim under the Alabama Securities Act. Instead, it held only that intent was not an element of such a claim. Id. at 827. Therefore, Banton does not decide the issue before us. Furthermore, our review of Alabama cases has revealed no decision on point.

The Ritches argue that we should, nevertheless, hold that causation is not an element of a claim under the Alabama Securities Act because the statute upon which it was modeled, § 410 of the Uniform Securities Act, does not require a plaintiff to establish causation. The Ritches also note that several legal commentators have expressly concluded that causation is not an element of a claim under the Alabama Securities Act. See Thomas L. Krebs & David R. Donaldson, Securities Litigation in Alabama, 20 Cumberland L.

Rev. 481, 531-532 (1990).

Robinson-Humphrey counters that we should find causation to be an element of the Ritches' claim because causation is an element of a federal law unsuitability claim under Rule 10b-5. Robinson-Humphrey argues that the elements of the Ritches' unsuitability claim should mirror those of a federal law unsuitability claim because Alabama courts frequently rely upon federal law when interpreting Alabama blue sky laws. See e.g. Buffo v. State, 415 So.2d 1158, 1162 (Ala. 1982). We are uncertain how the Alabama Supreme Court would resolve this dispositive issue of Alabama law.

### III. Certification

Because there is no clear authority on point, we will certify the following question to the Alabama Supreme Court for instruction pursuant to Ala.R.App.P. 18:

> Whether a cause of action brought pursuant to section 8-6-19(a)(1) of the Alabama Securities Act for a violation of the Alabama Securities Commission's Rule 830-X-3-.12 requires the element of causation.

Our phrasing of this question is intended in no way to limit the Supreme Court of Alabama in its inquiry and consideration of the various

**8**

problems and issues posed by the entire case as the Supreme Court perceives them to be. To assist in its determination, the entire record and the briefs of the parties shall be transmitted to the Supreme Court of Alabama.

AFFIRMED IN PART.

QUESTION OF STATE LAW CERTIFIED TO THE ALABAMA SUPREME COURT.